UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAWRENCE RYAN, | Case No. 3:19-cv-00286-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| BARRICK GOLDSTRIKE MINES INC., | |
| Defendant. | |

I.    **SUMMARY**

Plaintiff Lawrence Ryan asserts claims for sexual harassment based on a hostile work environment and retaliation. (ECF No. 1.) Before the Court is Defendant Barrick Goldstrike Mines, Inc.'s motion for summary judgment ("Motion"), contending that Plaintiff cannot meet his burden nor demonstrate a question of material fact. (ECF No. 26.)[1] Because the Court finds Plaintiff has failed to demonstrate existence of a genuine issue of material fact, the Court will grant Defendant's Motion as to both claims.

II.    **BACKGROUND**

The following facts are undisputed unless otherwise noted.

Plaintiff was employed by Defendant from December 4, 2017 until his resignation on August 31, 2019. (ECF Nos. 26-3 at 2, 29 at 13; 26-17 at 26.) On May 30, 2019, Plaintiff filed a discrimination and harassment complaint alleging that one of his co-workers, Erica Williamson, sexually harassed him during a training session the previous July.

---

[1]The Court has reviewed Plaintiff's response (ECF No. 29), and Defendant's reply (ECF No. 32).

Plaintiff worked as a haul truck operator, which involved moving material in haul trucks and occasionally helping train new employees on equipment operation. (ECF No. 26-17 at 9.) On July 17, 2018, a new employee, Erika Williamson, mentioned that she was having difficulty operating her haul truck. (*Id.* at 10.) Plaintiff was given permission to train Williamson on the roll stability control ("RSC") system. (*Id.*) Plaintiff spent approximately 30 minutes in the haul truck showing Williamson the RSC system. (*Id.*)

The content of the 30-minute exchange is partially in dispute. Plaintiff alleges that during the exchange, Williamson asked him to adjust her seat "because her pussy hurt because she had been fist fucked by a black individual out of Winnemucca the night prior." (ECF No. 26-17 at 11.) Williamson does not recall saying "fist fucking" but does not deny it and concedes that it was an explicit sexual conversation. (ECF No. 26-18 at 7.) Plaintiff alleges that Williamson also indicated something "in regard to touching herself [and] . . . wanted [his] hand to pleasure herself with" (ECF No. 26-17 at 12) and informed Plaintiff that she had "been felt up and finger banged in a moving haul truck by a previous trainer" to which he laughed in response. (*Id.*) Further, Williamson told Plaintiff that she had a video "with a dildo of her fucking herself on the pit bus at work that she had shown to another operator" to which he responded "[he]'d love to see that reaction. Let me see that text message." (*Id.*) Williamson disputes having such a video or mentioning a video with a dildo. (ECF No. 26-18 at 8.) Further in dispute is Williamson's claim that Plaintiff asked if he "could see [her] boobs" to which she responded "I don't have any pics on my phone" and he said "well maybe later you could go into the blue room?" (ECF No. 26-6.)[2] Also in dispute is Plaintiff's reaction to the conversation—he testified that he told her he was happily married and denied the advances by saying, for example, "not in this fucking lifetime." (*Id.* at 11.) Williamson testified that she did not know he was married and thought that her and Plaintiff "were joking . . . more of a hee-haw conversation." (ECF No. 26-17 at 12.)

_____

[2]Plaintiff testified that Williamson took his statements to mean "I want to see your breasts" when he meant that he just wanted to see his coworker's reaction to the pictures. (ECF No. 26-17 at 12.)

Following the training, Plaintiff texted trainer Brad Hicks to inform him that he trained Williamson on the RSC. (ECF No. 26-22.) Plaintiff did not mention any conversation or make any allegations of sexual harassment at that time. Hicks reported this conversation to Williamson who then approached Plaintiff in front of other coworkers and told him "he had no right to go to the training department" and "belittle[] [her] saying [she] was an incompetent haul truck driver." (ECF No. 26-18 at 10.) After the shift ended, Plaintiff texted Williamson and asked her to "apologize to [him] in front of the bus line at the end of shift" the next day for yelling at him in front of their coworkers. (ECF Nos. 26-7 at 12, 26-17 at 15.) Williamson did not apologize. (ECF No. 26-17 at 15.) Plaintiff then went to supervisor Russ Brown to complain about Williamson and explained the situation to him, including information about the sexual content of the conversation. (*Id.*)[3] Brown said it sounded like a sexual harassment case and escalated it to supervisor Jim Yanick and then HR. (*Id.*)

On July 19, 2018, Plaintiff met with Yanick, Brown, and Nick Nelson at which point he wrote a statement regarding the incident with Williamson. (ECF No. 26-8.) An investigation was opened that day. (ECF No. 26-10.) Williamson was immediately suspended with pay pending an investigation. (ECF Nos. 26-17 at 17; 26-18 at 11.)

On July 23, 2018, Plaintiff was interviewed and copies of his text messages were collected. (ECF No. 26-10 at 10.) Defendant interviewed four employees. (ECF No. 26-5.) On July 26, 2018, Defendant interviewed Williamson. (ECF No. 26-6.) Williamson admitted that she made explicit comments to Plaintiff, including that she texted explicit photographs to another employee. (*Id.*) Williamson reported that Plaintiff said that he "wanted to see her tits." (*Id.*) Given these allegations, Plaintiff was then suspended for three days with pay pending investigation.

---

[3]Plaintiff testified that he "didn't care at that time about any of the sex stuff that she had talked about and all that. I just wanted to redeem myself. She came at me like a banshee over an assumption, and it wasn't even true. So I simply asked her, 'Apologize, the way you came at me.'" (*Id.*)

The investigation concluded that Williamson "participated in inappropriate behavior with Lawrence Ryan and Tim Johnson" and it was recommended that she receive a Written Reminder. (ECF Nos. 26-10.) The investigation further concluded that Plaintiff as a "trainer indulged the inappropriate conversations with his trainee Erica. As a trainer Lawrence is in a position of authority in that situation and should have immediately ended the inappropriate conversations" and recommended an Oral Reminder.[4] (*Id.*) Williamson received a Written Reminder (ECF No. 26-12) and Plaintiff received an Oral Reminder (ECF No. 26-11).

On November 30, 2018, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC"). (ECF No. 26-13.)

In December 2018, Plaintiff filed another complaint with Defendant after learning from another coworker that Williamson continued to speak about the initial complaint. (ECF No. 29 at 10.) Both Plaintiff and Williamson were again suspended with pay pending an investigation. (ECF No. 26-17 at 22.)

On February 7, 2019, Plaintiff filed a second Charge of Discrimination with NERC. (ECF No. 26-15.) The second charge alleges the same allegations. (*Id.*)

Plaintiff subsequently received a right to sue letter from NERC and initiated this suit (ECF No. 1), alleging the same claims: "Sexual Harassment" and "Retaliation/Discrimination."

Plaintiff resigned on August 31, 2019. (ECF Nos. 29 at 13; 26-17 at 26.)

III.     LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to

---

[4]Nick Nelson, Barrick employee and the person most knowledgeable, testified that Plaintiff was also punished in part for his delay in reporting the inappropriate conduct. (ECF No. 29-2 at 8.)

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

Plaintiff claims that Defendant created a hostile work environment and then retaliated against him after he filed a formal complaint.[5] Defendant argues that Plaintiff has failed to demonstrate any dispute of material fact on either claim and that it is entitled to judgment as a matter of law on both. (ECF No. 26.) The Court agrees and will grant summary judgment on both claims.

### A.  Hostile Work Environment

Plaintiff first alleges that Williamson "embarked upon a course of sexual harassment" that created a hostile work environment.[6]

"Title VII guarantees employees 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of ... sex." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998).

To succeed on a hostile work environment claim a plaintiff must establish three elements: (1) plaintiff was subjected to "sexual advances, requests for sexual favors or

---

[5]Plaintiff's Complaint is somewhat confusing. His "First Cause of Action" is sub-captioned "Sexual Harassment" and his "Second Cause of Action" is sub-captioned "Retaliation/Discrimination." (ECF No. 1 at 2-5.) The Court construes his first claim as a hostile work environment discrimination claim and his second claim as a retaliation claim.

Defendant construes Plaintiff's second claim as both a retaliation and disparate treatment discrimination claim. (ECF No. 26 at 17.) But, to the extent that Plaintiff was ever raising a disparate treatment discrimination claim, it appears that he has since abandoned it. In his reply, Plaintiff clarifies that he "is not contending he was suspended and denied training opportunities 'on account of Ryan's status as a man.' He is contending he was subject to retaliation because he complained of sexual harassment." (ECF No. 29 at 26.) Therefore, the Court only construes the second cause of action to be a retaliation claim.

[6]As noted, Plaintiff's Complaint does not clearly state claims associated with Title VII causes of action. The first cause of action is titled "Sexual Harassment." Because Plaintiff alleges that he is "subject to a hostile work environment 'because of sex', in violation of 42 U.S.C. 2000e, et. seq.," the Court considers his "First Cause of Action (Sexual Harassment)" as a claim for discrimination based on a hostile work environment theory.

other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991) (citation omitted).

"To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) ("Although it is clear that not every insult or harassing comment will constitute a hostile work environment, repeated derogatory or humiliating statements can constitute a hostile work environment.") (intentional quotations and citation omitted).

While a court must assess whether a reasonable person in the plaintiff's position would consider the workplace to be hostile, "complete understanding of the victim's view requires, among other things, an analysis of the different perspectives" members or different groups might face. *Ellison*, 924 F.2d at 878. When considering summary judgment motions, the Ninth Circuit Court of Appeals has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d at 1112.

### 1. Severe or Pervasive

Defendant admits that the behavior in question was not "appropriate for the workplace," but argues that the alleged conduct is neither pervasive nor severe because it was limited to a single 30-minute interaction with Williamson. (ECF No. 26 at 11.) Thus, Williamson's "isolated comments would not alone support a claim for hostile work environment." (*Id.* (citing *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1020 (9th

Cir. 2018) ("A violation is not established merely by evidence showing sporadic use of abusive language, gender-related jokes, and occasional teasing."); *Dominguez-Curry v. Nev. Transp. Dep't,* 424 F.3d 1027, 1034 (9th Cir. 2005) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); *Kortan v. Calif. Youth Authority,* 217 F.3d 1104, 1110 (9th Cir. 2000) (offensive comments "mainly made in a flurry" on one day do not constitute hostile work environment). Plaintiff responds that "Ms. Williamson embarked upon a *course of sexual harassment* directed at plaintiff" and "foment[ed] harassment against him." (ECF No. 29 at 17-20.)

The Court agrees with Defendant that Plaintiff's allegations are neither severe nor pervasive enough to establish a claim, even when drawing all inferences in the light most favorable to him.

"The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *McGinest*, 360 F.3d at 1113; *see, e.g.*, *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 914 (N.D. Cal. 2020) (rejecting the argument that a pattern of racially disparate treatment over five years was not sufficiently severe because each incident should be analyzed separately as "counter to the concept of a hostile work *environment*" and "inconsistent with the holistic approach endorsed by the Ninth Circuit and the Supreme Court") (emphasis in original); *see also Shaninga v. St. Luke's Med. Ctr. LP*, Case No. CV-14-02475-PHX-GMS, 2016 WL 1408289, at *13 (D. Ariz. Apr. 11, 2016) (acknowledging that "repeated derogatory or humiliating statements can constitute a hostile work environment" but finding the work environment was not hostile because the plaintiff only cited three incidents). Indeed, the Ninth Circuit more recently found that comments that did not include racial slurs but were nevertheless tinged with racism, such as "we should close the borders to keep motherf***ers like you from coming up here," were "demeaning comments that directly reference race or national origin," not "'offhand comments' or 'merely offensive utterance[s].'" *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 688 (9th Cir. 2017) (distinguishing *Faragher v.*

*City of Boca Raton*, 524 U.S. 775 (1998)); *see also Kendall v. Nevada*, 434 F. App'x 610, 612-13 (9th Cir. 2011) (reversing summary judgment because a series of demeaning comments that extended throughout the plaintiff's employment could establish a hostile work environment claim even if one incident alone may not be actionable).

The conduct at issue is neither pervasive nor severe. The alleged conduct occurred during a 30-minute interaction. Although Plaintiff argues that Williamson engaged in a "*course of sexual* harassment" (ECF No. 29 at 17-20), he offers no admissible evidence to support this contention. In fact, Plaintiff testified that he made no other complaints about sexual harassment from Williamson other than the July 2018 incident. (ECF No. 26-17 at 24 (Q: "Other than the complaints about Erika Williamson made in July 2018, did you make any other complaints about sexual harassment?" A: "No.")); *see Reynaga v. Roseburg Forest Prods.*, 847 F.3d at 687-88 (emphasis added) (overturning the district court's grant of summary judgment, citing to instances where the defendant made explicit racial and national origin comments, but that decision was based on evidence "includ[ing] *repeated examples* of unwelcome conduct of a racial nature."); *see also Draper v. Coeur Rochester,* 147 F.3d 1104, 1109 (9th Cir.1998) (finding hostile work environment where plaintiff's supervisor made *repeated* sexual remarks to her, told her of his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and asked over a loudspeaker if she needed help changing her clothes) (emphasis included).

Viewing the severity of the conduct inversely with its frequency, the severity of the conduct is insufficient to outweigh the infrequent conduct so as to establish a hostile work environment claim. *See Brooks v. City of San Mateo,* 229 F.3d 917, 923 (9th Cir. 2000) (collecting cases) (finding no hostile work environment based on a single instance of sexual harassment in which the plaintiff's supervisor pushed her up against a console, touched her breasts underneath her shirt, and told her "you don't have to worry about cheating [on your husband], I'll do everything."); *see also Campbell,* 892 F.3d at 1020 ("Such isolated comments were not part of a larger series of ongoing harassment that

9

Campbell suffered; there is no suggestion that Jones had ever made such comments to her before or that he ever did again."); *Kortan*, 217 F.3d at 1111 (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 817 (9th Cir.2002) (finding that a Korean plaintiff suffered national origin harassment where the employer verbally *and physically* abused the plaintiff because of his race); *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 419-22 (9th Cir. 2013) (finding that a supervisor's comments about "girly work," "Double D" to refer to large breasted women, tampons and whether women "got off" using a particular kind, and orgasms and how women were lucky to get multiple were not sufficiently severe or pervasive).

While the Court agrees that Williamson's comments here are not appropriate for the workplace, they are nevertheless not analogous to those found insufficiently severe or pervasive in other cases as noted above. The 30-minute exchange consisted of unwelcomed sexual comments, with no instance of unwelcomed touching or physical harassment. While words alone might be enough to find the conduct severe, in most cases, the evidence indicated pervasive, repeated examples of such unwelcomed verbal conduct. Thus, absent more severe conduct and evidence of pervasive sexual harassment, even viewing the evidence in the light most favorable to the non-moving party, no jury could find the conduct severe or pervasive enough to establish a hostile work environment claim. The Court therefore grants summary judgment on Plaintiff's hostile work environment claim.

## 2. Remedial Actions

Defendant further argues that even if Williamson's actions created a hostile work environment, it is still not liable because "it took prompt corrective measures." (ECF No. 26 at 14.) Plaintiff responds that Defendant did not maintain a reasonable policy against

sexual harassment and did not effectively respond to Plaintiff's complaints.[7] (ECF No. 29 at 13-14.) Specifically, Plaintiff proffers evidence that Defendant suspended him with pay, in part, for his one-day delay in reporting the alleged harassment. (ECF No. 29 at 15). Further, Plaintiff alleges that Defendant then failed to "cure the effect of inflicting discipline upon the victim" which he argues led to "false rumors of sexual predation." (ECF No. 29 at 16.)

Because the alleged misconduct was by a fellow employee or trainee, Defendant can only be liable for a hostile work environment created by Williamson to the extent that it failed to reasonably respond to the conduct or to the extent that it ratified or acquiesced in it. *See Campbell,* 892 F.3d at 1017; *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755–56 (9th Cir. 1997). Reasonableness is evaluated "only from the perspective of what the employer knew or should have known at the time it acted … [and] as an initial matter, the employer must learn what actually happened." *Campbell*, 892 F.3d at 1017.

Remedial action must include some form of disciplinary measures, *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1482 (9th Cir. 1997), which must be "proportionate[ ] to the seriousness of the offense." *Ellison*, 924 F.2d at 882 (citation omitted) ("Title VII requires more than a mere request to refrain from discriminatory conduct."). Further, prompt action alone is not enough, but "remedial measures must also be effective." *Reynaga,* 847 F.3d at 688 (citing *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) ("When the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment.")).

---

[7]Specifically, Plaintiff argues that the *Ellerth/Faragher* affirmative defense is off limits because Defendant did not maintain a reasonable policy. (ECF No. 29 at 14.) But, Defendant does not raise an *Ellerth/Faragher* defense, and even if it did, while it is true that an employer is vicariously liable for a hostile work environment created by a supervisor, *Vance v. Ball State Univ.* 570 U.S. 421 (2013), that does not apply here in the context of a complaint amongst co-workers. *See also Swinton v. Potomac Corp.,* 270 F.3d 794, 803 (9th Cir. 2001). Thus, the Court does not address Plaintiff's *Ellerth/Faragher* affirmative defense arguments and rather looks only to whether Defendant reasonably responded to Plaintiff's complaint.

Here, the Court finds that Defendant reasonably responded, acting both promptly and effectively. Upon receiving the complaint on July 19, 2018, Defendant immediately suspended Williamson, drafted an investigation report (ECF No. 26-10), gathered a written statement from Plaintiff (ECF No. 26-8), conducted interviews with employees (ECF No. 26-5), reviewed text messages between Williamson and Plaintiff (ECF No. 26-7), and interviewed Williamson (ECF No. 26-6). On July 26, 2018, after learning from Williamson that Plaintiff allegedly requested to see her breasts, Plaintiff was then immediately suspended with pay pending further investigation.[8]

Although Plaintiff asserts that the remedial measures were not effective,[9] the Court disagrees. Upon concluding the investigation Defendant disciplined both parties accordingly.[10] Plaintiff made no other complaints about sexual harassment from Williamson. (ECF No. 26-17 at 24 (Q: "Other than the complaints about Erika Williamson made in July 2018, did you make any other complaints about sexual harassment?" A: "No.")).) Although Plaintiff argues that the December 2018 complaint is evidence of an ineffective policy, the December 2018 complaint alleges statements made by Williamson

---

[8]Defendant's suspension of both parties *with pay* in order to conduct an investigation into the allegations was not unreasonable under the circumstances. *See Campbell,* 892 F.3d at 1017 (finding that "as an initial matter, the employer must learn what actually happened."); *Swenson v. Potter,* 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."). Further, although Defendant admits that Plaintiff was suspended in part because he did not immediately report the conversation (ECF No. 29-2 at 8.), he was primarily disciplined for engaging in an inappropriate conversation with a trainee (ECF No. 26-6 at 4).

[9]Plaintiff alleges that the response was not reasonable because Williamson made later statements to co-workers as outlined in his December 2018 complaint (ECF No. 29 at 21-22). Plaintiff further alleges that the response was ineffective because "rumors [were] spread by Ms. Williamson" and "Barrick's actions corroborated those rumors" and he was "ostracized" and "his reputation has been trashed." (ECF No. 29 at 18.)

[10]Defendant concluded that Williamson used inappropriate language of a sexual nature and participated in sexual conversation with Plaintiff while operating the haul truck (ECF No. 26-10 at 4), and she was issued a Written Reminder for violation of the harassment policy (ECF No. 26-12 at 2-4). Defendant additionally concluded that Plaintiff indulged in inappropriate conversation with his trainee (Williamson) (*Id.*), which violated its harassment policy and for which he was issued an Oral Reminder. (ECF No. 26-11 at 2).

to others that had nothing to do with sex.[11] Thus, the Court finds the response was both prompt and effective to protect Defendant from liability for Williamson's alleged sexual harassing conduct. The Court accordingly grants Defendant's Motion on Plaintiff's hostile work environment claim on this basis as well.

## B. Retaliation

Plaintiff's retaliation claim is based on Defendant's conduct following the filing of the complaint—suspension, written warning on his personnel file, deprivation of training job duties, deprivation of overtime. (ECF No. 29 at 22-23.)

Title VII makes it unlawful for an employer to discriminate against any employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff alleging retaliation under Title VII carries the initial burden of establishing a prima facia case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "The elements of a prima facie retaliation claim are: (1) the employee engaged in a protected activity; (2) the employee suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Davis*, 520 F.3d at 1093-94.

If the plaintiff can establish a prima facie case of unlawful retaliation, the burden then shifts to the defendant employer "to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons." *Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011) (citation omitted). If the employer can show a legitimate and non-discriminatory reason for its action, then "the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination." *Id.* A plaintiff must present "very little evidence" of pretext to survive summary judgment. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003). "Because motivations are often difficult to ascertain, such an inquiry should be left to the trier of fact since impermissible motives

---

[11]Defendant also responded to this complaint by conducting another investigation, further evidencing a prompt and effective remedial response to initial allegations of sexual harassment.

are often easily masked behind a complex web of post hoc rationalizations." *Reece v. Pocatello/Chubbuck Sch. Dist. No. 25*, 713 F. Supp. 2d 1222, 1231 (D. Idaho 2010) (citations and quotation marks omitted).

Defendant concedes that Plaintiff engaged in protected activity under Title VII when he reported a complaint. (ECF No. 26 at 22.) But Defendant argues that Plaintiff failed to meet the additional elements to establish a prima facie case because he suffered no adverse employment action. The Court finds there is no genuine dispute of material fact as to adverse employment actions, and as to Defendant's proffered reasons; therefore, the Court will grant summary judgment as to the retaliation claim.

### 1.    Adverse Employment Action

Defendant argues that none of Plaintiff's proffered adverse employment actions— suspension without pay, Oral Reminder, deprivation of training opportunities, loss of overtime pay, and ostracism and hostility from coworkers (ECF No. 29 at 22-25)— constitute an adverse employment action. The Court agrees.

The Supreme Court defines adverse employment actions as "employer actions that would have been materially adverse to a reasonable employee or job applicant . . . actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

First, the Court finds that suspension with pay to conduct an investigation and an Oral Reminder are not adverse employment actions because neither is materially adverse to a reasonable employee. Plaintiff has failed to offer any undisputed evidence or case law to the contrary. And any alleged change in the terms and conditions of employment related to the suspension with pay—the loss of overtime and loss of training opportunities—is either purely speculative or not materially adverse.

As to the loss of overtime, it is unclear if Plaintiff lost scheduled overtime. While he initially testified that he lost three days of overtime pay (ECF No. 26-17 at 18), after some back and forth it became clear that he cannot recall. (*Id.* at 19 ("Q: How could those have

14

been then three days that you were not scheduled where you wrote your name in for the overtime days? A: Shit, I don't know. Q: That's fine. We can leave it at that. That's fine. A: I don't recall. I don't remember."). Thus, not only has Plaintiff failed to offer evidence that he lost three overtime days as a result of the suspension, but even if he had, the loss of three days of overtime hardly meets the standard needed to demonstrate an adverse employment action because it is not materially adverse so as to impact the terms and conditions of his employment.

As for the loss of training opportunities, there is no evidence that Plaintiff ever tried to train and was denied or was outright denied all future training opportunities after the filing of his complaint. The Ninth Circuit has found that when a jury could find that an employer "downgraded [his] promotability status and that [he] failed to receive a promotion" that could be sufficient to establish retaliation. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 500-01, 506 (9th Cir.2000) (involving low rating on job performance review, decreased job responsibilities, and failure to receive promotions). There is no evidence of that here. Plaintiff testified that he was never officially designated a trainer (ECF No. 26-17 at 9-10), did not receive a "certain amount of hours a week to function as a trainer" (*Id.* at 11), and typically received training opportunities on an "ad hoc" or "case-by-case basis" (*Id.*). Thus, the Court cannot reasonably conclude that he was demoted because he was never designated as a trainer, and the loss of future "ad hoc" training opportunities is speculative.[12]

Finally, Plaintiff's claims of retaliation or ostracism by coworkers is not an adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir.2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action.") (citation omitted).

---

[12]Even if the Court were to conclude that the loss of *potential* future training opportunities is an adverse employment action, Plaintiff failed to demonstrate a causal link—that he would have had future training opportunities but for his protected activity.

In sum, the Court finds that the actions Plaintiff complained of do not amount to adverse employment actions to support the first prong of his prima facie case.

**2.    Burden Shift to Defendant to Show Legitimate Business Reason**

Even if Plaintiff were to establish a prima facie case based on Defendant's decision to suspend Plaintiff with pay and to issue an Oral Reminder,[13] Defendant has met its burden to show that it had legitimate, non-retaliatory reasons to support its actions. Defendant's proffered legitimate reason is Plaintiff engaged in an explicit conversation with a trainee and reported it only after she later embarrassed him and allegedly asked for nude photographs from a trainee. (ECF No. 26 at 24.) Thus, Defendant suspended Plaintiff with pay, as well as Williamson, to conduct an investigation into the allegations. Plaintiff was then issued an Oral Reminder based on information that he engaged in the inappropriate conversation, including asking to see Williamson's breasts. (ECF No. 26-6.) Accordingly, the Court grants the Motion as to the retaliation claim.

///
///
///
///
///
///
///
///
///
///
///

---

[13] Because the causal link element is construed broadly, and often timing alone is enough when "an adverse employment action follows on the heels of protected activity," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002), a causal link exists as to the suspension, Oral Reminder, and loss of overtime, because these actions came only days after the complaint was filed. However as noted above, the Court finds none of the alleged actions amount to adverse employment actions. *See* discussion *supra* Sect. IV(B)(1).

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 26) is granted.

It is further ordered that the Clerk of Court enter judgment in accordance with this Order and close this case.

DATED THIS 19th Day of May 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE